**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PRESSLEY DWANE WIGGINS, | **Case No. 1:16-cv-41-GSA** |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Pressley Dwane Wiggins ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2]  After reviewing the administrative record, the Court finds the ALJ's decision is not supported by substantial evidence and the Court grants Plaintiff's appeal.  The case is remanded for further proceedings.

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 8 and 10).

1

## II.     BACKGROUND AND PRIOR PROCEEDINGS

Plaintiff filed an application for DIB and SSI on March 14, 2011, alleging a disability beginning October 1, 2010.[3]  AR 15; 230-245.  His applications were denied initially on May 23, 2012, and on reconsideration on January 4, 2012.  AR 15; 131-141. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  ALJ Daniel Pittman conducted a hearing on March 20, 2014 (AR 32-73), and published an unfavorable decision on April 23, 2014. AR 12-31. Plaintiff filed an appeal on May 16, 2014. (AR 7-11). The Appeals Council denied the request for review on November 20, 2015, rendering the order the final decision of the Commissioner. AR 1-6.

Plaintiff now challenges the denial of benefits, arguing that the ALJ's assessment of the medical evidence was improper. Specifically, he contends that the ALJ erred because he did not give specific and legitimate reasons for rejecting Dr. Eckstein's (an examining psychologist's) opinion. (Doc. 16, pgs. 8-12; Doc. 21, pgs. 5-8).  He also argues that the ALJ improperly evaluated Plaintiff's physical impairments by giving weight to Dr. Wiggins' (a non-examining physician) opinion but failed to incorporate his limitation that Plaintiff should avoid moderate exposure to hazards, fumes, odors, dusts, gases and poor ventilation into the residual functional capacity ("RFC").[4]  As a result, the ALJ erroneously found that Plaintiff could perform work as a cleaner, store laborer, and a hand packer. (Doc. 16, pgs. 6-7; Doc. 21, pgs. 3-5). Plaintiff requests that the Court reverse the ALJ's final decision and remand the case.

Defendant argues that the ALJ gave specific and legitimate reasons for rejecting Dr. Eckstein's opinion. (Doc. 20, 8-10).  Additionally, the Commissioner contends that even though the ALJ did not incorporate Dr. Wiggins' environmental limitations into the RFC, the error is harmless because the record supports the ALJ's findings that Plaintiff only needed to avoid concentrated exposure to these environmental conditions. Therefore, the Court should affirm the

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545, 416.945.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

ALJ's decision. (Doc. 20, pgs. 7-8, 10).

**A.   Medical Record**

The entire medical record (AR 333-514) was reviewed by the Court.  Only evidence relating to the issues raised in Plaintiff's appeal are outlined below.

On June 20, 2011, Plaintiff was seen at Community Medical Center ("CMC") for treatment for seizures. AR 336.  It was noted that Plaintiff began having seizures at the age of eight and was taking Dilantin.  He stopped taking the Dilantin after two years and recently began having seizures again about eight months ago.  Since that time, he reported having several seizures.  Dr. Daniel Dasilva prescribed Keppra twice a day which Plaintiff could increase to three times a day if the seizures were not controlled. AR 337. A history of asthma was also noted, and Albuteral (an inhaler) was prescribed to be used as needed. AR 340.

On August 24, 2011, Plaintiff went to the Emegency Room ("ER") at Community Regional Medical Center after having a seizure.  AR 347-348. It was noted that he had not taken Dilantin. AR 347.  Keppra was represcribed. AR 348.

On September 15, 2011, Plaintiff was evaluated at CMC again. AR 342. He reported having a seizure about a month ago, and complained that the Keppra was making him tired and that he was having difficulty with this memory.  AR 343.  It was noted that Plaintiff had a normal EEG in July and that a recent MRI of his head was negative. AR 343. He exhibited normal mood, affect, and behavior but reported he was depressed. AR 342. He was taking Albuterol for his asthma as needed but he was not experiencing respiratory difficulty at the time of the appointment. Upon examination, his breath sounds were normal. AR 342. Plaintiff was prescribed Keppra and was referred for a neurology consultation. AR 343.

On March 13, 2012, Plaintiff went to the ER at CMC after having a couple of seizures of unknown durations. He had not been taking his seizure medication but wanted to get back on them. AR 352.  He also reported wheezing and requested another inhaler.  Upon examination, his breath sounds were normal, and there was no wheezing or respiratory distress. AR 351-352. Plaintiff was prescribed Keppra and Albuteral. AR 354.

On April 14, 2012, Plaintiff returned to the ER at CMC with complaints of a seizure. AR

356. He reported that he had stopped taking the Keppra because it was making him too tired. AR 356. Plaintiff denied any psychological symptoms. AR 357. He was properly oriented to person, place, and time. AR 357. He exhibited normal mood and affect. AR 357. Plaintiff was prescribed Keppra and Albuterol. AR 459.

He returned to CMC on May 15, 2012 for a follow-up appointment. He complained that the Keppra was not helping his seizures, but instead was making him drowsy and tired. AR 483. It was noted that in the past, Plaintiff's seizures had been controlled on Dilantin but it was discontinued when he was diagnosed with Hepatitis C. AR 483. His was oriented to person, place and time, he had normal mood and affect and his behavior was normal. AR 483. His breath sounds were also normal. AR 483. The doctor discontinued the Keppra and prescribed Dilantin. AR 484.

On May 25, 2012, Plaintiff went to CMC after he woke up on the floor. AR 478. He reported he had not taken the Keppra for a few days because it did not work. He had not started the Dilantin because he did not have a ride to the pharmacy to pick up his medication. AR 478.

On May 22, 2012, Dr. L. Kiger, M.D. a state agency physician reviewed Plaintiff's records and opined that Plaintiff was capable of work at all exertional levels. AR 81. Dr. Kiger noted that Plaintiff's asthma was effectively controlled with medication, and Plaintiff required only basic asthma precautions. AR 80.  In addition, Dr. Kiger opined that Plaintiff should avoid concentrated exposure to fumes, odors, dust gases, and poor ventilation. AR 82.

On July 16, 2012, Plaintiff was seen at the ER at Mercy Medical Center  because he had a seizure and had not taken his seizure medication. AR 445-446. He reported having no money and was living at a rescue mission AR 445. The doctor prescribed him Dilantin so that he could stabilize and see his primary care physician. AR 445.

On July 23, 2012, Plaintiff sought treatment for possible depression at Mercy Medical Center. AR 441. He reported impulsively taking 80 Dilantin pills the week before. AR 441. He indicated that he was not suicidal but looking for help. AR 441. He stated that he had no intent to harm himself. AR 442. He was diagnosed with depression without suicidality. AR 442. Plaintiff was prescribed Zoloft. AR 442.

On August 3, 2012, Plaintiff underwent a mental health assessmment at the Douglas County Health and Social Services Department. He reported experiencing depression and anxiety, including panic attacks. AR 371. He exhibited normal speech, thought content, perception, affect, and mood. AR 372. He denied suicidal ideation. AR 378. Plaintiff was provided information regarding walk-in and phone services he could access. AR 379. His prognosis was good with an estimated length of treatment of one to two months. AR 381. Plaintiff was to start treatment on August 10, 2012, but there is no indication that he initiated treatment. AR 370.

Plaintiff was seen at the UCHC Roseburg clinic on August 16, 2012 because his seizure disorder had deteriorated and as a follow-up after his trip to the ER. AR 409. Blood levels were taken and Plaintiff was prescribed a new regimen of anti-seizure medications. AR 409-410.  He was diagonosed with severe depression but it was recommended that the Zoloft he had been prescribed at the ER be terminated until the seizures were under control. AR 409. He was monitored for the next six weeks.

On October 9, 2012, Plaintiff had been on a consistent dosage of Dilantin for six weeks and was still experiencing seizures every four to six days. AR 406. Plaintff also continued taking his Albuterol inhaler for his asthma which remained controlled, as it had for many years. AR 404.

On September 25, 2012, Lloyd H. Wiggins, M.D., reviewed Plaintiff's records as part of his application for disability, and opined that he was capable of work at all exertional levels. AR 111. Dr. Wiggins further opined that Plaintiff required asthma precautions and should avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation. AR 112.

On November 21, 2012, Judith Eckstein, Ph.D., performed a consultative psychological evaluation at the request of the state agency. AR 382-387.  Plaintiff reported feeling depressed and discussed his suicide attempt in July 2012. AR 382. He reported that his daily activities included attending church twice a day and working in a maintenance shop. AR 384. Dr. Eckstein noted that Plaintiff presented normally other than the occasional stutter. AR 385. He exhibited a fairly strong "information fund" during cognitive testing. AR 386. He could do basic math and had a functioning immediate memory. AR 386. Dr. Eckstein diagnosed a mood disorder secondary to the seizure disorder with depressive and anxious features including suicidal ideation.

She noted a history of Hepatitis C; described psychosocial stressors of homelessness, poverty, unemployment, and recent loss of relationship; and diagnosed a Global Assessment of Functioning score of 46, indicating a serious impairment. AR 387.

Plaintiff continued treatment at the UCHC Rosenburg Clininc from December 2012 through January 2013 for seizures, as well as to assess his depression. AR 396-402. Plaintiff was prescribed Dilantin and Lamictal. AR 397. He was diagnosed with moderately severe depression and agreed to start Citalapram because Zoloft was "not a good fit for him." AR 399.

On January 2, 2013, Megan D. Nicoloff, Psy.D., reviewed Plaintiff's records. AR 112-14. She opined that Plaintiff had no more than moderate mental limitations, and could perform simple, repetitive work. AR 112-114.

Plaintiff was seen at Mercy Medical Center on February 19, 2013. He was brought in for evaluation and treatment after he was found running down the street. AR 428. He woke up in the ambulance. AR 429. Plaintiff refused a complete blood count, chem panel and a Dilantin level. AR 429. He was discharged after refusing treatment and requesting to go home. AR 429.

He presented again at Mercy Medical Center on March 16, 2013, after having a grand mal seizure lasting a few mintues. AR 424.  Plaintiff reported being compliant with his seizure medications. AR 424. He was examined and discharged without incident. AR 424.

Plaintiff was seen at the ER at Mercy Medical Center on May 9, 2013 and reported having three seizures in one day. AR 509.  Plaintiff reported that he had been taking his Dilantin. AR 509. A CT scan and blood work were ordered but the Plaintiff did not want to incur additional expenses and left the hospital against medical advice. AR 509. His mood was normal although he was agitated at times. AR 511.

On May 31, 2013, Dr. Eckstein completed a Mental Residual Functional Capacity Form as a follow-up report to her previous evaluation. AR 452-455. Dr. Eckstein opined that Plaintiff would be precluded from performing the following activities 10% or 15% or more out of a day: understanding, remembering, and carrying out detailed instructions; carrying out very short and simple instructions; maintaining attention and concentration; performing activities within a schedule; sustaining an ordinary routine without special supervision; completing a normal

workday or workweek without interruptions; responding appropriately to changes in a work setting; being aware of hazards; and traveling to unfamiliar places. AR 452-554. Dr. Eckstein also noted Plaintiff would be unable to "perform independently, appropriately, effectively, and on a sustained basis, for 7.5 hours per day, 5 days per week, and in a regular, competitive work setting" for 75% of the time. AR 455.

Plaintiff presented at the ER again at Mercy Medical Center on October 26, 2013, after having a seizure, falling, and hitting his face. AR 495. He reported having four seizures in the last three days. He reported taking Dilantin, Lamictal, and Keppra, although he indicated that he was decreasing the Keppra because of the side effects. AR 495. He was living at the mission and reported that he was depressed but did not have any suicical ideation. AR 495. A CT scan of his head and face showed no acute intracranial process but that he had bilateral nasal bone fractures and a nasal septal fracture. AR 496-498. He tested positive for amphetamine, methamphetamine, benzodiazepines, methadone, and cannabis. AR 496. Dilantin levels were at less than 0.4. Plaintiff was discharged with a prepack of Percocet and he was told that he needed to stop taking Methamphetimine and start taking his seizure medications. AR 496.

Plaintiff appeared at the ER at Mercy Medical Center two days later on October 28, 2013. AR 486. He reported leaving his medication at the Greyhound bus station and that he was unable to get to it. He stated he had been assaulted a few days ago and was struck in the head. AR 486. He denied any drug use. Another CT scan of the head was ordered because of the assault and because Plaintiff had raccoon eyes. He was prescribed Dilantin but his levels still remained low and he was prescribed another prepack of Percocet for nasal pain. AR 487. He was released without incident. 487.

Plaintiff appeared at the ER at Community Medical Centers on January 6, 2014 on a 5150 hold after having a seizure and throwing his seventy-seven year old step-mother to the floor and kicking her while in a postictal state.[5] AR 468-469. Reports indicated that Plaintiff had tried to

---

[5] Postictal state occurs after the active stage of a seizure. During the postictal stage the body begins to relax, and the after effects of the seizure may set in. The after effects may include numbness, headache, fatigue and drowsiness, partial paralysis, confusion and agitation, loss of consciousness or unresponsiveness, or a loss of bowel or bladder control. www.uchospitals.edu/specialties/neurosciences/epilepsy/stages/html.

kill his father who locked himself in a room. Plaintiff pushed and kicked his step-mother to the floor in an effort to reach his father. AR 470. Police were called and Plaintiff was tazed which resulted in a severe headache, a laceration to the face, as well as left elbow pain. AR 467. Plaintiff reported being off of his seizure medications for the past five days and had been having two to three seizures over the past three days. AR 468. He was unkept, angry and hostile, had pressured, loud and rapid speech, and was paranoid. AR 469. Imaging of the Plaintiff's head and elbow were generally normal. AR 471-472. The cut on his face was repaired and he was released from the hospital on January 7, 2014. AR 461.

### III.  THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1502(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.920(a)(4) and 404.1502(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 416.1529, 416.927, and 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had

medically-determinable "severe" impairments,[6] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his or her past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

### A. The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 15-25.  Specifically, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015, and that Plaintiff had not engaged in substantial gainful activity since October 1, 2010, the alleged onset date in the applications. AR 17.  The ALJ identified seizure disorder, asthma, depressive disorder, and generalized anxiety disorder as severe impairments. AR 17.  Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 18-19.

Based on the entire record, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels except that Plaintiff should not climb ladders, ropes, or scaffolds; and he must avoid concentrtated exposure to hazards, fumes, odors, dusts, gases and poor ventilation. The ALJ also limited Plaintiff to simple, routine tasks with occaisional contact with the public. AR 19-24.  Based on this RFC, the ALJ determined that Plaintiff could not perform his past work as a cabinetmaker, sheet metal worker, repairer, table saw operator and assembler, but could perform work as a hand packager, a store laborer, and cleaner. AR 25.

### III. STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

---

[6] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

**IV.   DISCUSSION**

  **A.   The ALJ Improperly Assessed the Medical Evidence.**

Plaintiff argues that the ALJ improperly rejected Dr. Eckstein's opinion without providing specific and legitimate reasons for doing so. (Doc. 16, pgs. 8-12; Doc. 21, pgs. 5-8). Specifically, Plaintiff contends that the ALJ's reliance on Dr. Nicoloff's findings in lieu of Dr. Eckstein's opinion is not supported by the record because Plaintiff presented with altered mental states after Dr. Nicoloff's assessment. *Id*. Moreover, Dr. Eckstein's testing revealed cognitive limitations including impaired concentration and impaired memory indicating Plaintiff suffers from a significant depressive disorder that the ALJ did not properly consider. *Id*.

The Defendant argues that the ALJ properly rejected Dr. Eckstein's opinion because it conflicted with the treatment evidence, as well as with Plaintiff's overall prognosis. Additionally, the ALJ relied on Dr. Nicoloff's contradictory opinion as a basis to reject Dr. Eckstien's findings which is a proper basis to reject a medical opinion. Therefore the ALJ's decision is supported by substantial evidence. (Doc. 20, pgs.8-12).

  *1. The Law*

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who

has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F. 3d 1273, 1285 (9th Cir. 1996). However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinon of a treating profressional may be rejected for "specific and legitimate" reasons. *Id.* at 830.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester,* 81 F.3d at 830.

Notwithstanding the above, the opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes v. Bowen*, 881 F.2d 751–755 (9th Cir. 1989).

*2. Analysis*

Here, the ALJ summarized the medical record. AR 27-24. In doing so, he accorded various doctors' reports differing weight. After accurately summarizing Dr. Eckstein's opinion (AR 382-387; 452-455), the ALJ stated as follows:

> Only very limited weight can be afforded [to] this assessment. Dr. Eckstein is a one-time examiner, who has provided a snapshot assessment of the claimant's functioning. In addition, although the claimant did seek mental health counseling, the prognosis was

> noted to be "good" provided the claimant attended appointments. There is nothing in the record to confirm that the claimant ever followed up or even attended one counseling session. This tends to suggest that the symptoms may not have been as severe as alleged.
>
> In addition, Dr. Eckstein apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist[s] good reasons for questioning the reliability of the Plaintiff's subjective complaints. AR 22.

The ALJ then found Plaintiff was not credible for the following reasons: 1) he was not compliant with his seizure medication which also contributed to his depression – if Plaintiff had taken the medications as prescribed, his seizure condition and depression would improve (AR 23); 2) Plaintiff offered no good reason for not taking his medications (AR 23); 3) Plaintiff's daily activities were not as limited as one would expect from a disabled person - he worked as a maintenence man at the mission where he was living, he reported to mental health professionals that he enjoyed fishing, hunting, camping, and outdoor sports, and he could perform light household tasks AR (23-24); 4) his doctors did not put any restrictions on him other than he was unable to drive (AR 23-24); and 5) his step-mother indicated that Plaintiff's convulsive seizures were controlled when he takes his medication. AR 23.

The ALJ then noted that Dr. Nicoloff reviewed the record and concluded that Plaintiff would have the following limitations:

> Moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistantence, and pace. She notes the claimant is capable of simple repetitive tasks, as well as a 40-hour workweek, with normal breaks. She also notes the claimant is capable of some complex, routine tasks, as evidenced by his day-to-day functioning. Significant weight is afforded to this assessmet, as it is entirely consistent with the overall medical evidence of the record. AR 23.

The ALJ also gave Dr. Kiger and Dr. Wiggins' (both non-examining state agency doctors) opinions significant weight. Both opined that Plaintiff's seizures would be controlled with medication and that Plaintiff would be able to perform medium work with seizure and asthma precautions. AR 23.

Defendant contends that all of these reasons constitutes substantial evidence for the ALJ's

decision. On its face, the evidence appears to support the Defendant's conclusion. However, a close evaluation of the evidence reveals that although the ALJ provided specific reasons for rejecting Dr. Eckstein's opinons, the reasons were not legitimate.

First, the ALJ dismissed Dr. Eckstein's opinion because it is a one-time snapshot of Plaintiff's functioning. AR 22. However, that is true of all consultative examiners and it is not a legitimate reason for rejecting the opinion. Second, while an ALJ is responsible for determining credibility and resolving conflicts in medical testimony, in this case, none of the physicians the ALJ relied upon (Drs. Wiggins, Kiger, or Nicoloff) ever examined the Plaintiff. More troubling is that Dr. Kiger and Dr. Wiggins' assessments were conducted in May and September 2012 respectively (AR 80-82; 111-112), and Dr. Nicoloff's assessment was done in January 2013. (AR 112-114). However, after that time, Plaintiff's seizure condition worsened as he had several severe episodes related to his seizure disorder. (Feb 2013 – Plaintiff running down the street and woke up in an ambulance, AR 428-429); (March 2013 - Plaintiff experienced a grand mal seizure, AR 424); (May 2013 - Plaintiff presented to the ER and reported having three seizures in one day, AR 509); (October 2013 - Plaintiff had another seizure during which he fell, hit his face, and broke his nose after having four smaller seizures a few days previously, AR 496-498); (February 2014 – Plaintiff physically attacked his seventy-seven year old step-mother while in a postictal state resulting in a 5150 detention, AR 468-472).

The ALJ correctly noted that there were periods when Plaintiff had not been his taking his medications as prescribed. AR 23; 347; 352; 356; 445-446; 468-469; 478; 486-487. However, there were also instances that the ALJ ignored where Plaintiff reported compliance and still suffered significant seizures. AR 406 (having 4-6 seizures a day while on Dilantin for 6 weeks); AR 409 (Plaintiff's doctor monitoring his medications); AR 424 (presented to ER after a grand mal seizure while taking Lamictal); 495 (fell on face during seizure and reported four seizures in the last four days while taking Dilantin, Lamictal, and Keppra); AR 509 (presented to the ER after suffering three seizures in one day while taking Dilantin). No doctor - treating, examining, or nonexamining - offered an opinion regarding how the seizures that occurred after January 2013 affects Plaintiff's ability to work, or alternativley, concluded Plaintiff would not have these severe

seizures if he had been taking his medication regularly. Although it is ultimately Plaintiff's responsibility for providing evidence to be used in the disability determination process, the ALJ also has a "special duty to fully and fairly develop the record and to assure that a claimant's interests are considered. *Widmark v. Barnhart*, 454 F. 3d 1063, 1067 (9th Cir. 2006). Here, the record was not fully developed in this regard. Moreover, contrary to the ALJ's findings that Plaintiff offered no good reason for being non-compliant with his medications, the Plaintiff indicated he was not taking his medications because of the side effects and because he was homeless and unable to obtain the medication due to a lack of funds. The record supports Plaintiff's testimony. AR 43-44; 50; 51; 53-54; 65-67; 342-343; 356; 387; 409; 445 478; 483; 486.

Finally, the ALJ also noted that Plaintiff's mother testified that his convulsive seizures are controlled when he takes his medication. AR 23. However, a review of the mother's testimony indicated that even when Plaintiff takes his medication, he suffers from seizures regularly. AR 65-67. (Plaintiff's mother testifying that since February 2014, Plaintiff had four grand mal seizures and continues to have two to three smaller seizures a day which render him unable to function even when on medication). AR 65-67.

Given the above, the ALJ's reasons for rejecting Dr. Eckstein's report are not supported by substantial evidence. Plaintiff has argued that the Court should credit Dr. Eckstein's findings as true and award benefits. A case may be remanded under the "credit-as-true" rule for an award of benefits where: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. at 1021. *See also*, *Treichler v. Commissioner of Soc. Sec. Admin*., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ

makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, it is unclear whether Plaintiff is disabled. Dr. Eckstein was not aware of Plaintiff's non-complaince with his medication at the time of her report and she did not consider this information. Moreover, she is not a medical doctor and is not qualified to make an assessment regarding Plaintiff's seizure condition. Therefore, the Court will not credit her report as true. Notwithstanding, it appears that Plaintiff's condition is worsening and a doctor has not assessed Plaintiff's condition. Thus, the record is not fully developed with regard to the how Plaintiff's seizure disorder and related depression affect his ability to work. The case will be remanded to the ALJ to obtain updated medical and psychological assessments so that Plaintiff's current conditions can be more properly assessed. The Court will leave it to the ALJ's discretion to determine which evaluations are most appropriate, however, it is noted that Plaintiff has never had a neurological consultation even though one has been recommended by Plaintiff's treating physician. AR 343.

**B. The ALJ Should Reassess the Medical Evidence Related to Plaintiff's Asthma**

Plaintiff contends that the ALJ improperly assessed limitations related to Plaintiff's asthma condition. Specifically, he argues the ALJ gave weight to both Dr. Kiger and Dr. Wiggins' opinons regarding Plaintiff's asthma, but they each gave differing limitations. Dr. Kiger indicated that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, was well as workplace hazards, while Dr. Wiggins indicated that Plaintiff should avoid even moderate exposure to those conditions. AR 82; 93; 112; 116. Plaintiff contends that despite crediting both to these doctor's opinions, the ALJ's RFC limited Plaintiff only to moderate exposure to these conditions. Plaintiff further asserts this was an error because it is unclear from the DOT whether the three jobs cited by the VE would require moderate exposure to pulmonary irritants. (Doc. 16, pgs. 6-7; Doc. 21, pgs. 3-5). Defendant acknowledges the ALJ committed an error but argues that the error is harmless because the record is clear that Plaintiff's asthma condition was controlled with medication, and no further questioning of the VE was required because the DOT is silent on whether these jobs require moderate exposure to

15

pulmonary irritants. (Doc. 20, pgs. 6-8).

In light of this remand as discussed above, this issue may become moot depending on the ALJ's evaluation of the new medical evidence. However, in the event that the issue is not moot, in any future order, the ALJ shall clarify what limitations he adopts from the medical evidence with regard to Plaintiff's asthma and identify reasons why he adopted those limitations and not others. Moreover, the ALJ shall include any identified limitation regarding environmental limitations into any hypothetical posed to a VE if appropriate, and question the VE whether those environmental restrictions would preclude Plaintiff from any of the jobs the VE identifies.

## V. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole. Accordingly, this Court ORDERS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED and the case be remanded consistent with the instructions contained in this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff, Pressley Dwane Wiggins and against Defendant Nancy A. Berryhill, Commissioner of Social Security, and against, and close this case.

IT IS SO ORDERED.

Dated: **February 24, 2017**           **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE